## MEASURE OF DAMAGES UNDER THE SALES ACT FOR BREACH OF AGREEMENT TO TAKE GOODS.

Common Pleas Court of Williams County.

RODERICK LEAN MANUFACTURING CO. v. LEE CASEBERE.

Decided, November 11, 1915.

*Sales—Order for Goods Having a Market Valnue Countermanded—Stipulation as to Liquidated Damages in Case of Breach Held Unenforcible—Measure of Damages Under the Sales Act.*

Where a purchaser of goods agrees to pay as liquidated damages 20 per cent. of the purchase price of the goods in case the order which he has placed is countermanded, and the goods covered by the contract of sale have a market value, wholesale and retail, in the marts of trade and the price thereof may be determined with reasonable accuracy, the sum mentioned as liquidated damages will be regarded as a penalty, and the plaintiff remitted to an action for the actual damages sustained by reason of the countermanding of the order.

*R. L. Starr*, for plaintiff.
*C. A. Bowersox* and *Lewis G. Christman*, contra.

SCOTT, J.

Demurrer to petition.

The plaintiff brought its action in the justice court of R. H. Lamphere, this township, by filing its bill of particulars therein on March 9, last, and judgment in that court was rendered and entered against the defendant for the amount claimed in the bill. Appeal was taken by defendant from that

judgment to this court. In due time after perfection of the appeal, plaintiff filed its petition herein. alleging therein, in substance, that in July, 1914, defendant was the owner and operator of a hardware store in Jewell, Defiance county, Ohio, and was engaged in selling agricultural implements, and other articles of merchandise; that the store was owned by the defendant; that the son of defendant was in charge of said store, in the general running and management thereof, as representative of defendant; that on July 23, 1914, plaintiff and defendant entered into a written agreement wherein and whereby defendant purchased of plaintiff certain cultivators, plows and disc-harrows, all specifically described in the petition, with the prices agreed to be paid by defendant for said implements, the total sum being $340.20; that said goods and property were to be delivered on or about January 1, 1915, at Jewell, Ohio, f. o. b. Toledo, each party to pay one-half of the freight, and if cash were paid for said goods, defendant was to have 5 per cent. discount.

The petition avers that the alleged written agreement contains a covenant and stipulation on the part of the defendant that he should not countermand said order except on payment to said plaintiff of 20 per cent. of the invoice prices of said goods as liquidated damages. This stipulation, or provision, is found in the alleged contract, and is in words and figures, following:

"Not to countermand this order, or to have shipment held beyond present season, except on payment to first party of 20 per cent. of the invoice prices of said order as liquidated damages. If shipment of this order is held beyond the time specified in this contract, same may be canceled at option of the first party."

Plaintiff alleges that on October 28, 1914, defendant, in writing countermanded the said order, as follows:

"JEWELL, OHIO, October 28, 1914.
"RODERICK LEAN MFG. CO.
"*Dear Sirs:* Please cancel my 1915 contract in full No. 105 as I am going to discontinue the implement line. Hoping this will meet your approval,
"I remain, Lee Casebere, Jewell, Ohio."

Plaintiff avers that on December 28, 1914, defendant still insisting on countermanding said order, and refusing to take or receive said goods, if shipped to Jewell, Ohio, plaintiff rendered to defendant a statement of the amount due to it from him for 20 per cent. liquidated damages on account of said countermanding of said order, in the sum of $63.41, and demanded payment thereof, and that defendant has refused to pay the same, and then follows a prayer for judgment for the amount claimed as liquidated damages.

To the petition of the plaintiff, defendant interposes a demurrer, containing two grounds, as follows:

*First.* That the petition does not state a cause of action in favor of plaintiff and against defendant.

*Second.* That said petition does state a cause of action in favor of defendant and against plaintiff.

What purpose the second ground of said demurrer can serve in this case we can not conceive, and it is not considered.

The first ground of the demurrer, in the light of the averments in the petition, raises and presents a difficult and perplexing legal question which we must try to solve in the light of the law as we have diligently and assiduously endeavored to find the law and apply it to the problem presented.

At the very threshold of our labors we are brought face to face with a multitude of conflicts found in the many decisions of our courts, as well as in some of the text-books of law writers. Indeed, it would seem that the conflicts are so countless and varied as to cast us into a shoreless sea of metaphysical jargon, so to speak.

We feel that our labors will have to be confined, largely, to an attempt to count, weigh and determine on which side of this mooted question may be found the "preponderance of conflicts." If the law were an exact science, for instance, like that of war, mighty burdens would dissolve into melting dew, and courts and lawyers might find an asylum of relief in many instances.

However, we fancy that one of the great purposes of the conflict of laws is to give those who play with buzz-saws a vicarious vocation. We have searched in vain for a case anal-

ogous to the instant one. Many cases are found in the law reports of the several states wherein the subject of liquidated damages and penalties is treated, but the vast majority of the cases relate to contracts for the sale of real estate, for delay in completing work, for breach of agreements not to engage in trade at a particular place and agreements not to disclose trade secrets, and those involving the good-will connected with a business, commercial or professional, but no case can be found anywhere that resembles the instant one in the slightest degree.

The legal problem to be unravelled in this case is:

Do the terms and provisions of the alleged contract, whereby the defendant agreed to pay the plaintiff company 20 per cent. of the purchase price of the goods sold, in case he should countermand the alleged order and refuse to accept the goods, constitute a claim and demand for liquidated damages or a penalty?

The plaintiff company forcibly, and with much plausibility, contends that the said provision in said agreement is one for liquidated damages, while defendant, just as forcibly, insists that said provision is one, not for the agreed payment of liquidated damages by defendant to plaintiff, but is a claim as for a penalty, or the actual damages suffered by plaintiff, if any. Both parties to the suit are fortified in their contentions by decisions upon the subject. But not being able to find any decision of any court, tending to elucidate the question here raised, we are left to find our way out of the woods by the use and application of certain well defined and established principles of law, enunciated by courts, treating of kindred subjects touching the construction of contracts.

It is clearly discernible from a study of the cases found in our law reports that no fixed rules can obtain in matters relating to the construction of the provision found in the contract in question, and it is impossible to lay down for the government of any or all cases of this kind any fixed or general rule of law to guide us to a sound and rational solution of the legal problem.

Each case must necessarily, and in a large degree, stand for its proper construction "upon its own bottom."

Certain well defined tests may be employed in determining whether or not the amount of money to be paid, under stipula-

tions in a contract similar to the one in question, as liquidated damages is in fact such damages or is a penalty.

It follows that if the sum, so stipulated, as and for liquidated damages, is taken as such, it then forms the measure of damages as between the parties to the contract, and upon the trial of the issues as to damages the jury are confined to such stipulated sum in considering and determining the measure and amount of recovery in the action; but, if such sum is held to be a penalty, then it follows that the actual damages sustained, and not the amount named in the contract or agreement, must be taken and considered as the measure of damages.

It is well said that courts are guided in determining this question by the language used in the instrument, the subject-matter of the contract, the intention of the parties to the instrument and the reasonableness or unreasonableness of the sum or amount stipulated.

We find the courts saying that the use of the words, ''penalty'' and ''liquidated damages'' in an instrument of the character involved, are not conclusive, although the word ''penalty'' *prima facie* excludes the idea of liquidated damages.

As to the language of the provision of the contract before us, there can be no question. It is clear, concise and unequivocal in its expression. Neither do we take time to challenge or discuss the reasonableness or unreasonableness of the sum stipulated as liquidated damages. If the sum be, in fact, liquidated damages, then it can not be held to be disproportionate to what might be the actual damage, in case of breach of the contract.

We come now to treat of the subject-matter of the contract in question. The courts seem to be in accord upon one proposition injected into the case, and that is, if the subject-matter of the contract is such that the damages for its breach may be computed with reasonable certainty, by definite rules, then, and in such case, the courts will take the sum stipulated by the parties to the instrument, as a penalty, and not as liquidated damages. But, if from the very nature of the subject-matter of the contract, the damages can not be ascertained with any degree of certainty, as when the subject-matter of the contract has no precise market value, or there are special or peculiar circumstances expressed and contemplated by the par-

ties to the contract, then, in such case, the stipulated sum will be held to be liquidated damages. This criterion seems to be the crucial test employed in arriving at a just, legal and equitable construction of contracts akin to the one in question.

It is true that the rules of law fixing the measure of damages in cases of breach of contracts for the sale of personal property can have no application here, and can not even tend to assist us in arriving at a just conclusion and solution of the main question considered, yet it may not be an extravagant waste of time to advert to the matter.

It is said, and not questioned, that the vendor of personal property, in a suit against the vendee for breach of contract of sale where the property has not passed by delivery, has the choice of any one of at least three methods or remedies to indemnify himself:

*First.* He may store or keep the property for the purchaser and bring his action to recover the entire purchase price.

*Secondly.* He may sell the property, acting as the agent of the purchaser, and recover the difference between the contract price and the price obtained on such sale; or,

*Third.* He may keep the property as his own, and recover the difference between the contract price of the property and the market price at the time and place of delivery.

Certain it is that the plaintiff does not seek to recover in this action its actual damages growing out of a breach of the contract, or a countermand thereof, but stands squarely on its claim and demand for liquidated damages, being the 20 per cent. of the entire purchase price of the goods sold.

Our purpose in reverting to these well established rules of law, fixing and governing the measure of damages in actions for breach of contracts of sale of personal property, is to show that the plaintiff had, and has, a well defined remedy for the alleged breach of the contract in question. No one dare be bold enough to question the right of any citizen of the land to enter into any sort of contract he or she may see fit to become a party to, provided such contract is not founded upon illegal, immoral or fraudulent acts, and is not against public policy. But, we read in the books, that parties are not privileged, under the law,

to stipulate their damages in any and all contracts. There seems to be a line of demarcation governing and fixing the rights of parties in this regard. Of this fact, the courts are in accord. It is only when the damages that may flow from a breach of a contract are of such uncertain character as that they can not be computed with reasonable exactness and certainty that parties are permitted to stipulate their damages in advance of the breach.

"It is a general rule of construction that the sum agreed upon * * * will be treated as a penalty unless it is payable for any injury of uncertain amount of extent." *State* v. *Dodd,* 45 N. J. Law, 525.

"If, from the nature of the agreement, it is clear that any attempt to get at the actual damage would be difficult, if not vain, then the courts will incline to give the relief which the parties have agreed on." *Scofield* v. *Tompkins,* 95 Ill., 190.

In doubtful cases the courts are inclined to construe the stipulated sum as a penalty and not as liquidated damages. *Wallis* v. *Carpenter,* 13 Allen (Mass.), 19; *Chaddick* v. *Marsh,* 21 N. J. Law, 463; *Drayton's Appeal,* 61 Pa. St., 175.

It is clear from a reading of the cases upon the subjects presented herein that the language used in the instrument is not controlling. This conclusion is borne out by undisputed authority. It is also held to be true that the amount of stipulated damages must not be disproportionate to the damages that would necessarily flow from a failure to perform. The fact that the parties, or either thereof, to a contract have made a hard bargain can have nothing to do with a decision of the question presented.

The contract or order in question relates to the sale of personal property. In the commercial world there exist certain ancient trade usages, and of these the court may take judicial notice. It may be a violent presumption to assume that a court knows anything, but we will take the hazard of assuming that courts have some knowledge, common to all mankind, and that there are some things that may be judicially noticed, such as the Declaration of Independence, and few such insignificant things that, possibly, exist. Customs and modes of business are things that the courts may take judicial notice of. The

existence of wholesale and retail markets may be judicially noticed.

In some of the states of the Union, the rights and remedies of parties to contracts for the sale of personal property, are regulated by statute. In Ohio we have what is called the "sales act," 99 O. L., 413 (Section 8381 G. C., *et seq.*). While there is no provision in the sales act against parties to contracts, for the sale of goods, stipulating damages, yet we think a reading of certain sections of the act will disclose, clearly, that the legal rights and remedies of parties to such contracts are fixed by this legislative enactment. This act creates a rule of law touching the measure and standard of damages that may be recovered by the seller against the buyer in case of breach of agreement.

Section 8444, General Code, paragraph one, provides that:

"(1)   When the buyer wrongfully neglects or refuses to accept and pay for the goods, the seller may maintain an action against him for damage for non-acceptance.

"(2)   The measure of damages is the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract.

"(3)   When there is an available market for the goods in question, the measure of damages is, in the absence of special circumstances, showing proximate damage of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept."

Here we have laid down in unmistakable terms by statutory enactment the rights of the parties to a contract of the kind in question.

The question arises now, can parties to such contract avoid the sales act, fixing the measure of damages for breach, and stipulate their damages—damages not sanctioned by this act? Is it not true that when parties in this state enter into a contract relating to the sale of personal property, they adopt and read into such contract, by implication of law, so much of this act as affects their rights, touching the recovery of damages for breach? We are inclined to answer this question in the affirma-

tive. If our answer be the correct one, then we might stop at this point and go no further.

However, we shall proceed along other lines and try and reach our conclusion upon the main point without resting our decision on the sales act.

Counsel for plaintiff company in his brief, wherein he attempts to demonstrate that the question presented should be solved in favor of his client, says that: The plaintiff company manufacture farm tools. That a great many ingredients enter into the cost of a manufactured article. They are sold at fixed prices, but the cost must be in the nature of a variable amount. The difference between the actual cost and the selling price would constitute the damages. But the cost of raw material, labor, over-head charges, taxes, insurance and many other variable items enter into the cost of any one of the articles sold under the contract. Hence, damages would be very difficult to ascertain. The rule that under such circumstances the parties may lawfully agree on damages, applies, and the amount of damages defendant owes plaintiff is the amount agreed upon.

We are in perfect accord with counsel in this statement found in his brief, but the great disaster that must follow this reasoning of counsel is, that nowhere in the petition herein can it be found, by way of averment, that plaintiff company is a manufacturer of the goods in question. We are not yet permitted to read anything into the petition that is not, in fact, found therein. It goes within repetition that the first ground of the demurrer, being general in its nature, admits averments of the petition which are material and well pleaded.

Courts may take judicial notice of the existence of certain markets in commercial affairs, such as wholesale and retail.

We have markets for grain, horses, mules, cattle, hogs, especially hogs, and markets for all manufactured articles, known to mankind, such articles ranging from a tooth-pick to a Corliss engine. The prices of commodities, goods and wares, in the wholesale markets of commerce, is fixed by the and from the cost of production, which cost includes all things named by counsel for plaintiff, and more not named. The price of articles in the retail markets is fixed upon the basis of a certain per cent. over

the wholesale cost. All these matters are of common knowledge to every person who cares to read as he runs. Prices of all commodities, naturally, fluctuate in the markets of the world, depending, almost exclusively, upon the rule laid down in political economy, that is, supply and demand.

If we were to adopt the argument found in the brief of counsel for plaintiff, that the cost of the production of an article of merchandise depends upon the cost of the raw material, labor, capital invested, taxes, insurance and overhead charges, yet, we believe that the cost of the production of such article could be calculated with reasonable certainty, although the prices of the various ingredients that enter into the manufacture of such article fluctuate in the markets of the country.

The general policy of the law is, in relation to the recovery of damages for breach of contracts for the sale of personal property, to hold the parties to the rule of law that the damages shall be commensurate with the injury sustained.

Such rule is just and humane, and can work no hardship to any one who may come within its purview.

We do not take the time to discuss the question of the intention of the parties to the contract in question, having arrived at our conclusion without reference to the intention of the parties.

We hold that the goods mentioned in the contract and petition herein, are of such nature as that they have a market value, wholesale and retail, in the markets of trade, and having such market value, the prices thereof may be determined with reasonable accuracy, and this being true, it follows that the damages of the plaintiff, sustained, if any, can be computed with reasonable exactness.

Our conclusion is that the sum stipulated by the parties herein, in said contract, as liquidated damages, is not such damages, but is a penalty, and that the plaintiff's measure of damages against the defendant rests upon the actual injury it has sustained by the countermanding of said contract or order.

The plaintiff, standing squarely upon its claim for liquidated damages, and no demand being made in its petition for actual damages, the first ground of the demurrer will be, and the same is, sustained, with exceptions.